UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

CIVIL ACTION NO. 3:22-CV-00153-JHM

JEFFREY JOHNSON                                                              PLAINTIFF

V.

JENNIFER BRIARLY, *et al.*                                        DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff Jeffrey Johnson's and Defendants' cross motions for summary judgment. [DN 34; DN 35]. Fully briefed, this matter is ripe for decision. For the following reasons, Defendants' motion is **GRANTED,** and Johnson's motion is **DENIED**.

### I. BACKGROUND

Plaintiff Jeffrey Johnson was an inmate at the Kentucky State Reformatory ("KSR") in La Grange until November 2022; he is now at the Calloway County Jail. [DN 35-1 at 1]. While he was at KSR, the prison instituted a new protocol for handling inmates' legal mail to ensure the mail could not be used as a vehicle to smuggle contraband into the facility. [*Id.*]. KSR required its staff to open inmates' privileged mail in the recipients' presence. [*Id.*]. After opening it, the staff photocopied the mail and gave the photocopies to the recipients, and the original mail was destroyed. [*Id.*; DN 1 at 4].

Johnson believes KSR's mail policy was facially unlawful. He sued KSR's warden, mailroom supervisor, and two other KSR employees—as well as the commissioner of the Kentucky Department of Corrections—in this Court in their official and individual capacities (collectively "Defendants"). [DN 1 at 1–3]. He alleges that the policy infringed on his rights under the First and Fourteenth Amendments and violated Kentucky laws about changing prison regulations

without state approval. [*Id.* at 4]. He also alleges that KSR employees opened his legal mail without him present on both August 26, 2021, and January 11, 2022, violating the First and Fourteenth Amendments and KSR's own policy. [DN 1 at 5; *see* DN 1-2 at 1; DN 1-3 at 38].

## II. STANDARD OF REVIEW

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show that there is some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

The fact that a plaintiff is *pro se* does not lessen his obligations under Rule 56. "The liberal treatment of pro se pleadings does not require the lenient treatment of substantive law, and the liberal standards that apply at the pleading stage do not apply after a case has progressed to the

2

summary judgment stage." *Johnson v. Stewart*, No. 08-1521, 2010 WL 8738105, at *3 (6th Cir. May 5, 2010) (citations omitted). When opposing summary judgment, a party cannot rely on allegations or denials in unsworn filings and that a party's "status as a pro se litigant does not alter his duty on a summary judgment motion." *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010); *see also United States v. Brown*, 7 F. App'x 353, 354 (6th Cir. 2001) (affirming grant of summary judgment against a *pro se* plaintiff because he "failed to present any evidence to defeat the government's motion"). However, statements in a verified complaint that are based on personal knowledge may function as the equivalent of affidavit statements for purposes of summary judgment. *Weberg v. Franks*, 229 F.3d 514, 526 n.13 (6th Cir. 2000); *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992).

### III. DISCUSSION

*A. Official Capacity Claims for Injunctive Relief*

Johnson initially sued all Defendants in both their official and individual capacities. [DN 1 at 1–2]. The Court initially dismissed Johnson's official-capacity claims for damages, allowing his individual-capacity claims and official-capacity claims for injunctive relief to proceed. [DN 14]. But Johnson's claims for injunctive relief are now moot because he no longer resides at KSR. An inmate's release from prison or transfer to another facility moots his request for injunctive and declaratory relief. *See Wilson v. Yaklich*, 148 F.3d 596, 601 (6th Cir. 1998) (holding that a prisoner's § 1983 claims for injunctive relief became moot after he was transferred to another facility); *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (finding in a § 1983 case that "to the extent Kensu seeks declaratory and injunctive relief his claims are now moot as he is no longer confined to the institution that searched his mail"). Because Johnson is now incarcerated at the

Calloway County Jail, his requests for declaratory and injunctive relief against Defendants in their official capacities regarding his incarceration at KSR are dismissed.

   *B. First Amendment*

The First Amendment protects a prisoner's right to receive mail, but prison officials may impose restrictions on the receipt of mail that are reasonably related to security and other legitimate penological objectives. *Sallier v. Brooks*, 343 F.3d 868, 873 (6th Cir. 2003). This includes opening a prisoner's mail "pursuant to a uniform and evenly applied policy with an eye to maintaining prison security." *Id.* (quoting *Lavado v. Keohane*, 992 F.2d 601, 607 (6th Cir. 1993)). But when the mail is legal mail, the Court has a heightened concern with allowing prison officials uninhibited access, because a prison's security interests do not automatically supersede a prisoner's First Amendment right to receive correspondence that relates to the prisoner's legal rights, attorney-client privilege, or access to the courts. *Id.* at 874.

To balance the inmate's First Amendment rights and the prison's security interests, courts have approved prison policies that permit prison officials to open legal mail and inspect it for contraband in the prisoner's presence. *Id.*; *see also Wolff v. McDonnell*, 418 U.S. 539 (1974); *Knop v. Johnson*, 977 F.2d 996, 1012 (6th Cir. 1992). Even constitutionally protected mail can be opened—but not read—by prison officials to inspect it for contraband. *Lavado*, 992 F.2d at 608 (citing *Wolff*, 418 U.S. at 577). Such activity *must* occur in the recipient inmate's presence. *See id.*; *Jones v. Brown*, 461 F.3d 353, 359 (3d Cir. 2006) (citations omitted) ("[T]he only way to ensure that mail is not read when opened . . . is to require that it be done in the presence of the inmate to whom it is addressed."). As long as legal mail is opened in front of its recipient inmate and not read by prison staff, the rest of a prison's mail policy "is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). Applying these

standards, this Court has routinely upheld prison policies that only give inmates copies of their legal mail after opening the originals in their presence, even when the prison destroys the original mail after its copies are completed. *See, e.g., Bray v. Mazza*, No. 4:21-CV-00119-JHM, 2022 WL 17836601, at *3–5 (W.D. Ky. Dec. 21, 2022); *House v. Henderson Cnty. Det. Ctr.*, No. 4:21-CV-00038-JHM, 2022 WL 4279724, at *3–4 (W.D. Ky. Sep. 15, 2022) (upholding mail policy where prison opened legal mail in inmates' presence and then scanned it onto an electronic tablet system, and inmates could only view the electronic copies of their mail). In *Bray*, the Court upheld a prison mail policy almost identical to KSR's. It held that a prison's policy of opening an inmate's legal mail in front of him, photocopying it, giving photocopies to the inmate, and discarding the original legal mail was reasonably "related to a legitimate penological interest." *Bray*, 2022 WL 17836601, at *4 (applying *Turner*, 482 U.S. at 89).

KSR's policy of opening legal mail in the inmate's presence, giving him photocopies of the mail, and destroying the original mail does not violate the forgoing law. The photocopies allowed Johnson to read every word of his mail, and not allowing inmates to handle the original mail is reasonably related to KSR's legitimate penological interest in preventing contraband from being smuggled in. *See Turner*, 482 U.S. at 89; *Bray*, 2022 WL 17836601, at *4. This Court upheld another prison's nearly identical mail policy in *Bray*, and it sees no reason to retreat from that decision now.

Johnson asserts that KSR employees actually *did* open his legal mail outside his presence on two occasions, violating the forgoing case law and KSR's own policy. As evidence, he submitted two pages of KSR's mail log that purport to record receipt of Johnson's "legal mail." [DN 1-2 at 1; DN 1-3 at 38]. The logs indicate that Johnson received marked legal mail from the Kentucky Innocence Project in August 2021, [DN 1-3 at 38], and legal mail from the ACLU of

Kentucky and this Court in January 2022. [DN 1-2 at 1]. In these logs, the box labeled "inmate signature" clearly has a name other than Jeffrey Johnson written in it, corroborating Johnson's allegations that someone else opened the legal mail outside of his presence before delivering it to him. [*Id.*; DN 1-3 at 38; DN 1 at 5]. But these are the only two occasions that Johnson alleges KSR employees opened his legal mail without him present. To "state a claim of constitutional proportions," the inmate must "allege routine opening or interference with his mail." *Barnes v. Daviess Cnty. Gov't*, No. 4:22-CV-P107-JHM, 2022 WL 17475783, at *4 (W.D. Ky. Dec. 6, 2022) (citing *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003)); *see also Okoro v. Scibana*, 63 F. App'x 182, 184 (6th Cir. 2003) ("Such a random and isolated incident [of mail interference] is insufficient to establish a constitutional violation."). Johnson says KSR employees opened (and later disposed of) his legal mail over one hundred times. [DN 36 at 1]. The two occasions—spaced four months apart—where KSR staff opened Johnson's legal mail without him present cannot amount to routine interference when the staff properly opened it *with* him present over one hundred other times. "[T]wo instances [of mail interference] taken together do not rise to a constitutional violation." *Lloyd v. Herrington*, No. 4:11-CV-P128-M, 2011 WL 6026661, at *2 (W.D. Ky. Dec. 2, 2011).

### C. Fourteenth Amendment

The Fourteenth Amendment protects inmates from being deprived of liberty without due process of law. *Wolff*, 418 U.S. at 556. One of those due process rights is the right of inmates to have meaningful access to the courts so they can litigate their cases. *Bounds v. Smith*, 430 U.S. 817, 821, 828 (1977); *Ross v. Moffit*, 417 U.S. 600, 611, 612, 616 (1974). By invoking the Fourteenth Amendment, Johnson implies that Defendants prevented his access to the courts by opening his legal mail without him present on two occasions. [*See* DN 1 at 5]. But to have standing to bring this claim, Johnson had to "show that he suffered prejudice to his right of access to the

court." *Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999) (citing *Lewis v. Casey*, 518 U.S. 343, 351 (1996)). He had to provide evidence of a "relevant actual injury" and demonstrate how the prison employees' actions "hindered his efforts to pursue [his] legal claim[s]." *Lewis*, 518 U.S. at 351. Johnson did not allege that the alleged mail interference harmed him or explain how it negatively impacted his civil or criminal cases. Johnson failed to state a Fourteenth-Amendment claim, so Defendants are entitled to summary judgment on it. *See Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996) ("[T]o state a claim for denial of meaningful access to the courts, [] plaintiffs must plead and prove prejudice stemming from the asserted violation.").

*D. State-Law Claims*

In addition to alleging federal constitutional violations under § 1983, Johnson makes multiple claims arising under Kentucky state law. Under 28 U.S.C. § 1367(c)(3), however, "[t]he district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." Having determined that the federal claims over which this Court has jurisdiction should be dismissed, this Court declines to exercise supplemental jurisdiction over the remaining state-law claims. *See United Mine Workers*, 383 U.S. at 726. Consequently, the state-law claims will be dismissed without prejudice.

## IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Defendants' motion for summary judgment, [DN 35], is **GRANTED**, and Johnson's motion, [DN 34], is **DENIED**.

Joseph H. McKinley Jr., Senior Judge
United States District Court

July 25, 2023

cc: Jeffrey Johnson, *pro se*
Counsel of Record

7